WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frankie Lee Rodriguez,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-13-00158-TUC-DTF<br><br>**ORDER** |

  Petitioner Frankie Rodriguez, presently incarcerated at the Arizona State Prison – Central Unit, in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before this Court are the Petition and accompanying Memorandum (Docs. 1, 3), and Respondents' Answer (Doc. 18). The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 20.) The Court finds that the Petition should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

  Petitioner was convicted of two counts of first degree murder, two counts of kidnaping, two counts of armed robbery, two counts of thefts of means of transportation, one count each of theft by control, second degree burglary, and theft by control and/or controlling stolen property. (Doc. 3-1 at 65.) Rodriguez was sentenced to multiple prison

terms, the longest of which were two consecutive life sentences. (*Id.*) The convictions were based on the following facts, as summarized by the appellate court:

> On November 1, 2000, Rodriguez and his codefendant Harper, burglarized the home of Harper's estranged father, taking guns, ammunition, and other items. Both men discussed this crime with a third person before and after committing it.
> In the early morning of November 12, 2000, D. left a friend's home in his red Volkswagen Jetta; D. was not heard from again. Rodriguez, Harper, and a third man were seen driving a red Jetta around noon that day. Other witnesses saw Rodriguez and Harper driving the Jetta during the month of November. On November 14, 2000, an occupied residence was burglarized by two men driving a red Jetta, later identified by the resident as Rodriguez and Harper. On November 15, 2000, the Jetta was discovered abandoned in an alley. Officers searched the vehicle and found guns stolen from Harper's father, a backpack containing papers with Rodriguez's name on them, and a motel receipt in a seat-back pocket, also in Rodriguez's name.
> On November 28, 2000, A. left her home around midnight to return movies to a nearby video rental store. She never returned to her apartment. Security videos from ATM machines showed Rodriguez and Harper using A.'s debit card to withdraw money, and a bank representative testified to other, unsuccessful attempts to obtain cash. A.'s credit card was used to purchase various items, and several witnesses saw Rodriguez and Harper with A.'s new teal green Blazer. After she disappeared, A.'s cellular telephone was traced and Rodriguez and Harper were identified as suspects. They were captured driving A.'s car and Harper had A.'s cellular telephone, debit card, and credit card with him. Two handguns, several pairs of shoes, and other items were also recovered during the arrest.
> After his arrest, Rodriguez gave several statements to police, led police to A.'s body in a remote desert area, and eventually admitted participating in kidnaping and vehicle theft involving A. Rodriguez's shoes were consistent with shoe prints found near A.'s body, and shell casings found in the area matched to a gun found under the Blazer when he was arrested, a gun he admitted having bought. D.'s body was found in the same area the next day during a training exercise for police cadaver dogs. Shoe prints found near the body were, again, consistent with Rodriguez's shoes. In a telephone call to M., who testified at trial, Rodriguez admitted he had been involved in both killings.

(Doc. 3-1 at 66-67.)

Rodriguez filed an appeal, which was denied by the Arizona Court of Appeals. (Doc. 3-1 at 2, 64.) The Arizona Supreme Court denied review. (*Id.* at 106.) Rodriguez then filed a petition for post-conviction relief (PCR). (*Id.* at 108.) The PCR court denied his petition on the merits. (Doc. 3-3 at 21-30.) The Arizona Court of Appeals affirmed the PCR court's denial. (*Id.* at 53-56.) The Arizona Supreme Court denied review. (*Id.* at 71.)

## LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state

- 3 -

decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within

§ 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (Miller-El I); *see Taylor v. Maddox*, 366 F.3d 992,

999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

## DISCUSSION

Respondents do not dispute the timeliness of the petition and concede that both Claims 1 and 2 are exhausted. (Doc. 18 at 4.) Both of Petitioner's claims allege that trial counsel was ineffective in violation of his constitutional rights.

Ineffective assistance of counsel (IAC) claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if

it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

**Claim 1**

Rodriguez argues that his counsel was ineffective for failing to challenge his arrest for lack of probable cause. He contends that when the police stopped the car in which he was a passenger, they had information only about the driver, his co-defendant John Harper. He states that after victim Gerber was reported missing, the police tracked calls made on her phone and withdrawals made on her ATM card to Harper only. According to Rodriguez, police had no information connecting him to Gerber's disappearance prior to the stopping of the car and, at that time, he had nothing on him connecting him to the crime. He argues that, if the arrest had been found improper, his subsequent statements would not have been admissible.

The PCR court made the following findings in ruling on this claim:

> Petitioner was arrested in a vehicle belonging to a victim. He was a passenger. Petitioner provided post-arrest statements. Petitioner contends there was no probable cause to arrest him.
> Police had video of the Petitioner using victim's debit card, a

it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

**Claim 1**

Rodriguez argues that his counsel was ineffective for failing to challenge his arrest for lack of probable cause. He contends that when the police stopped the car in which he was a passenger, they had information only about the driver, his co-defendant John Harper. He states that after victim Gerber was reported missing, the police tracked calls made on her phone and withdrawals made on her ATM card to Harper only. According to Rodriguez, police had no information connecting him to Gerber's disappearance prior to the stopping of the car and, at that time, he had nothing on him connecting him to the crime. He argues that, if the arrest had been found improper, his subsequent statements would not have been admissible.

The PCR court made the following findings in ruling on this claim:

> Petitioner was arrested in a vehicle belonging to a victim. He was a passenger. Petitioner provided post-arrest statements. Petitioner contends there was no probable cause to arrest him.
> Police had video of the Petitioner using victim's debit card, a

> witness had seen Petitioner in the victim's vehicle, and the victim's cell phone was traced identifying Petitioner as a suspect. Also, being in a stolen vehicle is a crime. A.R.S. § 13-1803(2).
> Petitioner has failed to show by a reasonable probability that had the Petitioner's arrest been contested the outcome would have been different.

(Doc. 3-3 at 24.)

Rodriguez argues that these factual findings by the PCR court were unreasonable, entitling him to relief under § 2254(d)(2). In particular, he argues these facts were not known at the time the vehicle was stopped (he does not argue they were not presented at trial). Respondent failed to address this argument or to acknowledge the PCR court's ruling, even though that is what this Court is tasked to review.

Because there was not a hearing on probable cause, evidence regarding what the officers knew at that time was never presented. If a state court's ruling is premised on an unreasonable determination of the facts, satisfying § 2254(d)(2), this Court then reviews the claim de novo. *Maxwell v. Roe*, 628 F.3d 486, 495 (9th Cir. 2010). The Court has insufficient information to evaluate the factual finding by the PCR Court. Therefore, the Court will presume the factual finding was unreasonable and conduct a de novo review based on the available evidence.

The following facts were known to the police at the time the vehicle was stopped. Contrary to Petitioner's argument, the officers knew the vehicle was stolen at the time they stopped it. This is established by all of the police documents upon which Petitioner relies. (Doc. 3, Exs. B, C, D at 1, 3.) At trial, there was testimony that when the police stopped the car, which was driven by Harper, Rodriguez attempted to flee. (Doc. 18, Ex.

- 8 -

C at 69-71.) A semi-automatic pistol was found underneath the passenger side of the vehicle after Petitioner and Harper exited from it. (*Id.* at 76-77.)

The Court assesses whether, on the facts of which it has proof, there was probable cause to arrest Rodriguez. "Probable cause to effect an arrest exists where the arresting officer has reasonably trustworthy information of facts and circumstances which are sufficient to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested is committing or did commit it." *State v. Nelson*, 633 P.2d 391, 395, 129 Ariz. 582, 586 (1981). The PCR court found there was probable cause to arrest Petitioner for violating A.R.S. § 13-1803(A)(2): unlawful use of means of transportation, which is committed if a person "[k]nowingly is transported or physically located in a vehicle that the person knows or has reason to know is in the unlawful possession of another person."

The known facts were sufficient under Arizona law for arrest: "we are persuaded that when a police officer stops a vehicle on a public highway for a traffic offense, and then discovers that the vehicle is stolen, he knows that a felony has been committed and has probable cause to believe that one or more of the persons inside the vehicle is participating in the commission of a felony." *State v. Marquez*, 660 P.2d 1243, 1246, 135 Ariz. 316, 319 (Ct. App. 1983). Further, when officers stop a vehicle known to have been stolen, Petitioner's flight could be taken by the officers as consciousness of guilt. *See State v. Saiz*, 476 P.2d 515, 516, 106 Ariz. 352, 353 (1970). The facts as known to the officers were sufficient to support probable cause to arrest Petitioner for violating § 13-

1803(A)(2).

Because there was probable cause, there is not a reasonable probability that the outcome would have been different if trial counsel had challenged the arrest. Therefore, Petitioner was not prejudiced by counsel not challenging his arrest. Claim 1 is denied on the merits.

**Claim 2**

Petitioner alleges counsel was ineffective for failing to contest the admissibility of his three statements to the police. Rodriguez argues that he was prejudiced because the statements were the central evidence against him, and a motion to suppress would have been granted due to violations of *Miranda* and lack of voluntariness.

At the beginning of the first interview started by Detective Deeming at 1:08 a.m. on November 29, the following exchange took place:

> Q   . . . But you do have rights and I'm gonna explain to you. I want you to listen carefully.
> A   I have the right to remain silent. Anything I say can and will be used against me in a court of law. If I cannot afford an attorney, one will be provided by, provided for you by the courts and, something like that.
>
> . . . .
>
> Q   You don't have to talk if you don't want to. It won't make us mad, won't change anything. Um, if you want an attorney, you can have one provided. Uh, do you understand all that? You sound like you understand it.
> A   (cuffs hitting table) Yeah, I understand it.

(Doc. 3-1 at 172.)

At 12:24 p.m. on November 29, Detective Brad Hunt began an interview with Rodriguez by asking if he had been advised of his *Miranda* rights. (Doc. 3-1 at 209.)

- 10 -

Rodriguez confirmed that he had been advised of them, understood them, and was willing to talk to Detective Hunt. (*Id.*) At 9:45 on November 29, Detective Anderson read Petitioner his *Miranda* rights, and Rodriguez agreed to talk to him. (*Id.* at 35.) Throughout the three statements, Rodriguez maintained that he did not shoot either victim, that he was merely present but did not steal either car, use any credit cards or kill anyone. (Doc. 3-1 at 172 to 3-2 at 62.)

While counsel and the trial court were discussing jury instructions, trial counsel stated:

> And I guess I should put on the record at this point that no *Miranda* or voluntariness motion was filed in pretrial or during the course of trial. That was done specifically as part of the trial strategy. Additionally, we didn't feel that at least *Miranda* would be supported, a *Miranda* motion would be supported by the evidence as it stood, and we specifically chose not to raise voluntariness based on the content of the statements and the desire to have them laid before the jury.

(Doc. 18, Ex. D at 6.)

The PCR court made the following findings regarding this claim:

> Petitioner made statements to the police after his arrest. Petitioner argues that without these statements the State's case would have been much weaker.
> Petitioner asserted a mere presence defense at trial. His statements to the police supported this theory. Petitioner's counsel specifically stated on the record that they did not feel a Miranda motion would be supported by the evidence, and they did not raise voluntariness as they wanted the statements before the jury. TR 4-4-02 p 6.
> It was a tactical decision not to challenge the admissibility of the Petitioner's statements. Trial counsel had a reasoned basis for making this decision. Petitioner has not made a colorable claim.

(Doc. 3-3 at 24.)

First, the Court reviews the state courts' factual finding that trial counsel made a strategic decision and assesses whether that finding was objectively unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing 28 U.S.C. § 2254(d)(2)). Counsel stated on the record that he made a strategic decision. Further, counsel fully drafted a motion to suppress the statements for lack of voluntariness and chose not to file it. (Doc. 3-2 at 64-71.) Thus, he evaluated his options before making the decision. There is no evidence countering counsel's testimony that he made a strategic decision not to move to suppress the statements. The record supports the state courts' finding that the decision was a strategic one and that conclusion was not objectively unreasonable.

Next, the Court must review the objective reasonableness of the state courts' ruling that counsel's strategic decision fell within reasonable professional judgment under *Strickland*. *See Wood*, 558 U.S. at 302-03 & n.3. Rodriguez has presented no evidence that counsel's decision was unreasonable, no opinion from another attorney, no prevailing norms from attorney guidelines, and no evidence from himself regarding the decision. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of unreasonableness that could satisfy "heavy burden" of proving that trial strategy was deficient). Review of the interviews reveals that Petitioner was in fact advised, and aware, of his *Miranda* rights. As noted above, counsel drafted a motion regarding voluntariness, therefore, he had the relevant information before him to make an informed decision. *Cf. Correll v. Ryan*, 539 F.3d 938, 951 (9th Cir. 2008) (holding that an uninformed decision cannot be found strategic).

As stated by the PCR court, the defense was mere presence. This defense was supported by Petitioner's statements, during which he always denied committing the murders. Rodriguez's statements to the police were the only way for the defense to present evidence of mere presence without subjecting Rodriguez to cross-examination. This is not an unknown approach in criminal cases. Overall, it was reasonable for counsel to refrain from seeking suppression of Rodriguez's statements. The state courts' denial of this claim was not an objectively unreasonable application of *Strickland*.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). The Court finds that reasonable jurists could not debate that the merits of any claim should have been resolved differently. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and

close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 2nd day of July, 2014.

_____
D. Thomas Ferraro
United States Magistrate Judge